UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| ⸻ | : | |
| Trey Smith-Journigan and Paul E. Williams, | : | |
| both individually and on behalf of a class of | : | |
| others similarly situated, | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | No. 2:18-CV-328 |
|  | : | |
| Franklin County, Ohio, | : | |
|  | : | |
| Defendant. | : | |
| ⸻ | : | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

Respectfully Submitted By:

Dated:  September 6, 2019

Elmer Robert Keach, III, Esquire
Admitted Pro Hac Vice
Law Offices of Elmer Robert Keach, III, PC
One Pine West Plaza, Suite 109
Albany, NY  12205
518.434.1718
bobkeach@keachlawfirm.com

Nicholas Migliaccio, Esquire
Migliaccio & Rathod, LLP
412 H Street, NE, Suite 302
Washington, DC  20002
202.470.3520
nmigliaccio@classlawdc.com

D. Aaron Rihn, Esquire
Robert Peirce & Associates, PC
707 Grant Street, Suite 2500
Pittsburgh, PA  15219
412.281.7229
arihn@peircelaw.com

Andrew Baker, Esquire
The Baker Law Group
107 South High Street, Suite 400
Columbus, OH 43215
614.228.1882
andrew.baker@bakerlawgroup.net

ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASS

<u>TABLE OF CONTENTS</u>

Introduction and Factual Background.................................................................................1

Proposed Class Definition..................................................................................................7

Standard of Review.............................................................................................................7

Argument.............................................................................................................................9

    I.    THE COURT SHOULD CERTIFY THIS ACTION AS A CLASS ACTION
           PURSUANT TO FED. R. CIV. PROC 23 ............................................................9

        A.  *Numerosity* ............................................................................................10

        B.  *Commonality and Typicality* ................................................................11

        C.  *Adequacy of Representation* .................................................................14

        D.  *Ascertainability* ...................................................................................16

        E.  *Money Damages (23(b)(3)* ..................................................................17

        F.  *Injunctive Relief (Rule23(b)(2))* ..........................................................19

        G.  *Partial Certification (Rule 23(c)(4)(A))* ...............................................20

Conclusion.........................................................................................................................21

## INTRODUCTION AND FACTUAL BACKGROUND

This case addresses the failure of Franklin County to allow pre-arraignment misdemeanor detainees an opportunity to post bail before being subjected to the indignities of a strip search, and being unnecessarily incarcerated for several hours. There are few facts in dispute here. Franklin County processes tens of thousands of misdemeanor arrestees per year at its two local jails, Corrections Center One, located in downtown Columbus, and Corrections Center Two, located on Jackson Pike in Franklin County. (2012 Annual Report, p. 36) (Exhibit 3). Almost all of these detainees have yet be arraigned before a judicial officer. All of these detainees are asked if they can post bail, and the vast majority of them, including Plaintiff Trey Smith-Journigan, indicate that they can do so.[1] (Bail Sheet) (Exhibit 5). Under Ohio law, misdemeanor detainees are presumptively entitled to bail after being arrested, with Ohio residents being able to post a minimal "appearance bond" on most misdemeanor charges for less than $100. (Franklin County Bail Table) (Exhibit One), (Pendy Dep., p. 91) (Docket 30). The Franklin County Municipal Court is open twenty-four hours a day, every day of the year to accept bail for detainees, which can be paid by credit card. (Pendy Dep., p. 55-56) (Docket 30). Mr. Smith Journigan had seven credit cards on his person at the time of his arrest, indicated a desire to post his bail, and was charged with a minor crime. (Property Report) (Exhibit 13); (Detainee Information Sheet) (Exhibit 4); (Smith-Journigan Dep., pp., 7-8, 17-18). A copy of the Plaintiff's bail form reflecting as much is provided below:

_____

[1] The Plaintiff acknowledges that Paul Williams is not an adequate class representative because he checked on Franklin County's bail form that he could not post bail. While Mr. Williams denies this, the Plaintiff has amended the class definition to exclude individuals who indicated on their bail form that they could not post bail, as this will clearly create individual issues that will be difficult to handle on a class wide basis. Mr. Williams's claims will be the subject of a motion to sever in due course.

MISCELLANEOUS UPDATE DOCUMENT

SMITH-JOURNIGAN, TREY                          17-19906
INMATE'S NAME:                              SLATE NUMBER

FIELDS TO BE UPDATED:     Remarks
INFORMATION:     Inmate was received at (circle one)  FCCC I   FCCCII

Inmate (check one)    was charged with Bond eligible offense
                      was charged with a non-Bond eligible offense

Inmate (check one)  had the financial means to post his/her own bond (cash or card)
                    did not have the financial means to post his/her own bond (cash or card)

Inmate was able to successfully post bond (check one) Yes ☐   No ☐

_____   _____    _____   8/20/17
INMATE            DATE       SUPERVISOR        DATE

DARST 1168        8/20/17    C Murphy          8-20-17
ORIGINATOR        DATE       UPDATED BY        DATE

3508-CC-51

SLATED

FCSO 000065

(Bail Sheet, Exhibit 5).  Regardless, Mr. Smith-Journigan was given no opportunity to post his bail before being subjected to a strip search, and was detained in Corrections Center One for over eight hours.  (Goodrich Dep., p. 105-106) (Docket 29); (Smith-Journigan Information Sheet) (Exhibit 4).  Mr. Smith-Journigan's experience is typical of that of the class members he proposes to represent, as no one entering the custody of Franklin County is given an opportunity to post bail before being strip searched and sent to a housing unit.  (Goodrich Dep., pp. 26, 43-44) (Docket 29).

2

In an ordinary local jail, responsible corrections officials take immediate steps to assist detainees who are eligible for bail to be released from custody, because: "If they get released, then they can walk out the door. I'd rather not have them in custody….it is a safety and security concern for Pima County." (Stewart Dep., pp. 30-31) (Docket 32). Franklin County is different, however, and not in a good way. Instead of holding detainees in their booking room for a period of time to give them an opportunity to post bail, Franklin County immediately begins processing them for admission into the jail's general population. This includes taking their property – including their cash and credit cards – strip searching them, providing them with a jail uniform, and sending them to a housing unit. (citation). These strip searches styled a "clothing exchange," involve misdemeanants disrobing down to their underwear. (Martin Dep., p. 9-10) (Docket 28); (Strip Search Policy) (Exhibit 2). While not as intrusive as visual cavity searches, this "clothing exchange" is still a strip search under both Federal and Ohio law. *See, Jones v. City of Brunswick,* 704 F. Supp.2d 721, 732 (N.D. Ohio 2010) ("It is equally clear that this reasonable expectation of privacy in one's body applies even when one is wearing underwear. The distinction between a full strip search and a strip search down to one's underwear is of degree, rather than kind."). (Quotations omitted).

Only after arriving in their housing unit, several hours later, can a detainee attempt to post their bail—without having their cash or credit cards—and generally through a family member. (Martin Dep., pp. 191-194) (Docket 28). Even a misdemeanor detainee who has sufficient cash in their pocket to pay their bail upon entry to the Downtown or Jackson Pike facility is denied the opportunity to post bail until being moved to a housing unit. (Goodrich Dep., pp. 40-42) (Docket 29). This practice is bizarre, unnecessary and illegal—especially when considering that detainees are strip searched when they can expeditiously post their own bail. This practice unnecessarily

3

impinges on a detainee's due process right to promptly post bail, and further implicates their rights against unreasonable searches under the Fourth Amendment to the United States Constitution. Even the Defendant's expert in another case questions the County's practices.

Bail in Franklin County is handled by the Franklin County Municipal Court, which, in turn, handles all misdemeanor cases in Franklin County, regardless of the municipality from which they originate. In order for the Franklin County Court Clerk's office to be made aware that a detainee is incarcerated, and eligible for bail, they must receive pedigree and charge information from the Franklin County Sheriff's Department. This information is transmitted to the Court Clerk electronically after it is entered into the computers at Corrections Center One and Corrections Center Two in a process called "slating." (Pendy, p. 21-22) (Docket 30). "Slating" can take as little as ten minutes, and is performed by a civilian employee of the Franklin County Sheriff's Department. (Martin Dep., p. 51) (Docket 28). The information necessary for slating is contained in an arrest report, except the "slate number," which is generated by the County computer system after a detainee is processed into the facility, including being subjected to a strip search and sent to a housing unit. (Pendy Dep., pp. 31-33) (Docket 30). Notably, Franklin County does not even begin "slating" a detainee until **after** they are strip searched. (Goodrich Dep., p. 42-43) (Docket Number 29). At this point, detainees cannot make phone calls seeking bail until arriving in their housing unit. Once a detainee is slated, their information is entered expeditiously by the Municipal Court Clerk's office, and a detainee can be bailed out in as little as 15 minutes thereafter. On an ordinary day, the Court Clerk's office can assess someone for bail, and prepare the necessary paperwork, in few minutes. (Pendy Dep., pp. 50-51) (Docket 30). Plaintiff Trey Smith-Journigan was held for several hours before his mother posted his bail despite having several credit cards in

his possession with a sufficient credit limit to pay his bail, as he detailed on a bail and property forms utilized by Franklin County.

Franklin County does not deny the truth of these allegations, but instead justifies them based on administrative convenience, claiming, at various times, they do not have the "space" to hold detainees to allow them to post bail, (Martin Dep., pp. 69-70) (Docket 28), or that they need to hold them for identification purposes. (Stobart Dep., pp. 99-100) (Docket 33). These allegations are patently false. First, Lieutenant Goodrich's testimony directly undermined this, and admitted that detainees could easily be held in the booking area pending their effort to post bail. (Goodrich Dep., pp. 63-64) (Docket 29) (In response to a question about possibly holding detainees until they could post bail, Lieutenant Goodrich answered "How difficult would it be? It depends on how many other inmates have been brought in. It's not difficult at all. It might be time-consuming, but not difficult at all."). These holding cells are more than sufficient to hold detainees while they wait to post bail. According to Lieutenant Goodrich, who regularly works in the booking area, the three large holding cells in the Downtown facilities booking area can hold at least 30 detainees. (Goodrich Dep., pp. 126-127) (Video of Site Inspection) (Exhibit 14). The Plaintiff notes for the Court that when Plaintiff Trey Smith-Journigan entered the Downtown Facility, six detainees entered the custody of the facility during an eight-hour shift, some of whom were not eligible for bail but all of whom could comfortably be placed into this holding cell. (Jail Commitments, August 20, 2017) (Exhibit 7). Finally, the County's own administrative convenience argument is undermined by their expert in another case, who clearly questions the correctional necessity of detaining someone who is presumptively eligible for bail, and can easily bail themselves out.

This case cries out for treatment as a class action. Plaintiff Smith-Journigan reiterates that pre-arraignment detainees, who are convicted of nothing and have yet to see a judicial officer, are

being denied their statutory right to post bail. There are no factual disputes here regarding Franklin County's polices and procedures, only about its justifications. The legal issues to be considered by the Court are simple. When an individual has a presumptive right to post bail under state law, does the County's conduct violate the due process rights of that individual and all members of the proposed class by holding them for several hours for no legitimate reason? *See, Dodds v. Richardson,* 614 F.3d 1185, 1206 (10th Cir. 2010) ("Plaintiff's right to be free from unjustified detention after his bail was set was clearly established such that a reasonable official in Defendant's position in April 2007 would have understood that his deliberately indifferent maintenance of the policies that prevented arrestees from posting preset bail for no legitimate reason violated the Constitution."); *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017) (Other Circuits acknowledge that substantive due process protection of this liberty interest attaches once arrestees are deemed eligible for release on bail.). Is it a violation of the Fourth Amendment to conduct blanket strip searches on individuals who can easily be segregated from a jail's general population while they work to post minimal bail? *See, Lewis v. v. Gov't of D.C.*, 195 F. Supp. 3d 53, 63–65 (D.D.C. 2016) ("Part IV limited *Florence*'s holding, explaining that there may be circumstances in which such search policies could be unreasonable [, …including], for example, those situations where … an arrestee's detention has not yet been reviewed by a magistrate or other judicial officer, the arrestee can be held in available facilities removed from the general population…."); *Florence v. Board of Chosen Freeholders,* 566 U.S. 318, 341-42, 132 S.Ct. 1510, 1524 (2012) (Alito, J., concurring) ("Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate. In some cases, the charges are dropped. In others, detainees are released either on their own recognizance or on minimal bail. In the end, few are sentenced to incarceration. For these

persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible.")

While the Plaintiffs suggest that these questions be answered in the affirmative, the Court does not need to address these questions now.  Instead, the issue before the Court is whether or not this case qualifies for treatment as a class action.  The Plaintiffs respectfully suggest that it does.

### Proposed Class Definition

Plaintiff Smith-Journigan seeks the certification of one class, with a modification to address a detainee's denial of the ability to post bail on the County's bail sheets.  Plaintiff Smith-Journigan seeks the certification of one class, as follows:

> All detainees who, at the time of final judgment, have been placed into the custody of the Franklin County Correctional Center and/or Franklin County Workhouse, after being charged with misdemeanors, summary violations, traffic infractions, civil commitments or other minor crimes, including failure to pay fines, who were immediately eligible for bail under Ohio law and the bail schedule and regulations mandated by the Franklin County Municipal Court, and who did not indicate, on the County's bail sheets, that they were unable to post bail. The class period commences on April 11, 2016 and extends to the date on which Franklin County is enjoined from, or otherwise ceases, enforcing its policy, practice, and custom of refusing to allow detainees to post bail upon their arrest, and requiring those same detainees to be strip searched. Specifically excluded from the Class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees, or assignees.

The Plaintiff no longer seeks the certification of the fines subclass, given the possibility that judicial action may be involved in the warrants underlying an arrest for failure to pay a fine.

### Standard of Review

"A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). "Plaintiffs seeking class certification bear the burden of demonstrating by a preponderance of the evidence

that the proposed class or subclass meets each of the requirements for class certification set forth in Federal Rule of Civil Procedure 23." *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 322 (S.D.N.Y. 2012); *Cerdant, Inc. v. DHL Express (USA), Inc.*, 2010 WL 3397501, at *4 (S.D. Ohio Aug. 25, 2010). "The Supreme Court has cautioned, however, that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for *556 class certification are satisfied." *McDonald v. Franklin Cty., Ohio*, 306 F.R.D. 548, 555–56 (S.D. Ohio 2015), *citing Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S.Ct. 1184, 1194–95 (2013). In other words, district courts may not "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *McDonald*, 306 F.R.D. at 555–56, citing *In re Whirlpool,* 722 F.3d at 851–52.

"If there is an error to be made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require." *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 323 (S.D.N.Y. 2012) (Internal quotations omitted.) Class certification is not the stage at which disputed issues of material fact should be decided. *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *19 (S.D.N.Y. Aug. 13, 2018). "In ruling on a motion for class certification, the Court is prohibited from considering the merits of the plaintiff's claims, but the Court may consider evidence outside of the pleadings to determine whether the prerequisites of Rule 23 are met." *Dillow v. Home Care Network, Inc.*, 2017 WL 2418738, at *2 (S.D. Ohio June 5, 2017).

A motion for class certification following a denial of a motion to dismiss is emphatically not an opportunity for a second round of review, at a higher standard, no less, of the substantive merits of plaintiffs' underlying claims. *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D.

173, 177 (S.D.N.Y. 2012). The "only question at the class certification stage is whether plaintiffs may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals." *Id.* (internal citations omitted.); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 204 (2d Cir. 2008) (courts must "assure that class certification motion does not become a pretext for a partial trial on the merits.")

## ARGUMENT

### THE COURT SHOULD CERTIFY THIS ACTION AS A CLASS ACTION PURSUANT TO FED. R. CIV. PROC. 23

The Court may certify a case for class action treatment where the plaintiff can demonstrate the threshold requirements of Fed. R. Civ. Proc. 23(a) — numerosity, commonality, typicality and adequacy of representation — are satisfied, and that the class satisfies one of the three criteria set forth in Fed. R. Civ. Proc. 23(b). *See McDonald v. Franklin Cty., Ohio*, 306 F.R.D. 548, 554 (S.D. Ohio 2015); *In Re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.,* 722 F.3d 838, 850 (6th Cir. 2013). Though the Court may consider the merits of this action because the "rigorous analysis may involve some overlap between the proof necessary for class certification and the proof required to establish the merits of the plaintiffs' underling claims," *id.* at 851, "'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Franklin Cty., Ohio*, 306 F.R.D. at 555-56 (citing *Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds*, 568 U.S. 465-66 (2013)). As such, "district courts may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Id.* (citing *In re Whirlpool*, 722 F.3d at 851-52). Ultimately, the decision to certify a class lies within the Court's discretion, but the Court "must

err in favor of certification when there is some doubt as to whether to certify a class." *In Re Foundry Resins Antitrust Litig.,* 242 F.R.D. 393, 402 (S.D. Ohio 2007).

Here, Plaintiffs easily satisfy each of Rule 23's threshold requirements, and, therefore, request that the Court certify this action as a money damages class under Rule 23(b)(3), or, in the alternative, as an injunctive relief class under Rule 23(b)(2). Should the Court find that full certification is not appropriate, Plaintiffs alternatively request partial certification under Rule 23(c)(4)(A) relative to the issues common to the class — whether Defendant's written and/or *de facto* policy of refusing to allow detainees charged with misdemeanors and other minor crimes to immediately post bail, as mandated by Ohio law, is unconstitutional; whether Defendant's written and/or *de facto* policy of strip searching detainees charged with misdemeanors and other minor crimes who are presumptively entitled to bail is unconstitutional; and whether such written and/or *de facto* policies existed during the Class period. As will be outlined below, numerous federal courts have not hesitated to certify class actions when addressing situations where municipalities have employed unlawful blanket policies, often involving gratuitous strip searches.

A.  *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." However, "[t]here is no strict numerical test for determining impracticability of joinder." *Franklin Cty., Ohio*, 306 F.R.D. at 556 (citing *In Re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). "Instead, courts adopt a flexible approach that considers the particular circumstances of each case." *Kimber Baldwin Designs, LLC v. Silv Communs., Inc.*, No. 1:16-cv-448, 2016 U.S. Dist. LEXIS 173481, at *9 (S.D. Ohio Dec. 15, 2016). A showing of a "substantial" number of class members is sufficient to satisfy the requirement of numerosity. *Whirlpool,* 722 F.3d at 852. "Courts widely recognize classes larger than 40 members are sufficiently sized."

*Kimber Baldwin Designs,* 2016 U.S. Dist. LEXIS 173481, at *9. *See also Taylor v. CSX Transp., Inc.,* 264 F.R.D. 281, 288 (N.D. Ohio 2007) (finding the numerosity requirement satisfied when the class definition consisted of forty individuals); *Kelly v. Montgomery Lynch & Assocs., Inc.,* No. 1:07-CV-919, 2007 U.S. Dist. LEXIS 93656, at *3 (N.D. Ohio Dec. 19, 2007) (finding fifty class members would be sufficient to satisfy the numerosity requirement).

In the related case of *McDonald v. Franklin Cty., Ohio,* this Court found numerosity was met where, "the number of misdemeanant detainees admitted to [the jail] who had photographs taken of their breasts, hypogastric region, genitals, and/or buttocks before being arraigned [was] ascertainable by reviewing records in [Franklin County's] Identiview system." *Franklin Cty., Ohio,* 306 F.R.D. at 556. There, records produced by the Defendant indicated there were 971 members of the proposed class. *Id.* Here, akin to *McDonald v. Franklin Cty., Ohio,* the number of misdemeanant detainees admitted to Franklin County correctional facilities is ascertainable from Defendant's records, and totals in the thousands, rendering joinder impracticable. Defendant's annual report from 2012 reflects that there were approximately 37,500 admissions to its Correctional Centers in 2010; 38,000 admissions in 2011; and 33,000 admissions in 2013. (2012 Annual Report, p. 36) (Exhibit 7).  A sizable portion of these admissions were for misdemeanor charges. From these numbers, it can be conservatively estimated that the Proposed Class and Subclass consist of thousands of individuals who have been unconstitutionally denied bail during the proposed class period. Thus, Plaintiffs respectfully suggest the requirement of numerosity has been satisfied in this action.

### B. Commonality and Typicality

"To prove commonality, Plaintiff must prove that 'the class members have suffered the same injury.'" *Franklin Cty., Ohio,* 306 F.R.D. at 556 (citing *Wal-mart,* 564 U.S. at 349-50).

Accordingly, "[t]he claims "must depend on a common contention . . . of such a nature that is capable of classwide resolution — which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Stated differently, 'the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the [d]efendant and the general policy is the focus of the litigation." *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14cv1071, 2016 U.S. Dist. LEXIS 51658, at *21-22 (S.D. Ohio Apr. 18, 2016) (citing *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609 (S.D. Ohio 2003)).

"To prove typicality, Plaintiff must prove that the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Franklin Cty., Ohio*, 306 F.R.D. at 556 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). This Court has advised "[a] plaintiff's claim is typical of the class if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Id.* (citing *In Re Am. Med. Sys.*, 75 F.3d at 1082); *see also Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (In instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members"). Notably, "[t]he plaintiff's claims need not be factually identical to the class members' claims in order to satisfy the typicality requirement." *Id.* (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). *See also LaFlamme v. Carpenters Local #370 Pension Plan,* 212 F.R.D. 448, 453 (N.D.N.Y. 2003) ("Factual differences will not prevent class certification where the claims arise from a common legal theory").

As this Court recognized in *McDonald v. Franklin Cty., Ohio,* "[t]he concepts of commonality and typicality 'tend to merge' in practice because they both 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Franklin Cty., Ohio,* 306 F.R.D. at 556 (citing *Wal-Mart Stores*, 131 S.Ct. at 2551 n. 5). *See also Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157, n. 13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge"). Therefore, courts often "consider[] the commonality and typicality requirements together." *Id.* (citing *In re Whirlpool*, 722 F.3d at 853).

Turning first to commonality, Plaintiffs assert commonality is satisfied because the issues of law and fact in their claims for relief are common to those of the proposed class members. Specifically, Plaintiffs argue that their claims and the class members' claims rise or fall on the issue of whether the Due Process Clause of the Fourteenth Amendment and the Fourth Amendment prohibit Franklin County from denying misdemeanants the opportunity to post bail and subjecting them to the indignity of gratuitous strip searches. Plaintiffs have provided evidence in the form of written policies, and testimony from the County's designated deponent and a booking Lieutenant, to support these claims. In fact, there are no real factual disputes underlying this claim; the County admits that Mr. Smith-Journigan, and thousands of other misdemeanor detainees, were eligible for bail, were able to post bail, were denied the ability to post bail and were instead sent to a jail's general housing units, and were strip searched on a blanket basis. Consequently, Plaintiffs maintain their claims and the proposed class members' claims "will be validated or invalidated in one stroke." *Franklin Cty., Ohio,* 306 F.R.D. at 556.

13

Turning next to typicality, Plaintiffs assert their claims are typical of the proposed class members' claims because Plaintiffs and the proposed class members were misdemeanants permitted to immediately post bail, as required by Ohio law; however, Defendant prevented them from doing so *and* subjected them to unwarranted blanket strip searches, in violation of their Due Process and Fourth Amendment rights.  As evidenced, Plaintiffs' claims arise from the same course of events, and Plaintiffs are pursuing the very same claims and legal theories available to all class members. *See also Marriott v. County of Montgomery,* 227 F.R.D. 159, 172 (finding typicality even where the claims of the representative parties involved a more detailed search than other class members, because they were conducted pursuant to the same policy); *Sutton v. Hopkins County,* 2007 U.S. Dist. LEXIS 3143, at *14 (W.D. Ky. Jan. 11, 2007) ("Because each named Plaintiff alleges an unconstitutional strip search after arrest for a minor violation or before release from jail, the claims of the representatives are typical of the class as a whole"); *Blihovde v. St. Croix County,* 219 F.R.D. 607, 617 (W.D. Wis. 2003) ("defendants acted pursuant to a policy that called for indiscriminate searches. If this allegation is true, then the named plaintiffs would be similarly situated to other members of the class"). As such, Plaintiffs respectfully suggest they have satisfied typicality.

In sum, Plaintiffs assert Rule 23's commonality and typicality requirements are met here because Defendant's common policy of denying eligible misdemeanants the opportunity to post bail, and then subjecting them to the indignity of a gratuitous strip search, caused their injuries and the injuries of proposed class members.

*C. Adequacy of Representation*

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Pursuant to Sixth Circuit precedent, the Court should consider "1) [t]he

representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.), *cert. denied,* 97 S. Ct. 182 (1976). "The first criterion overlaps the typicality requirement." *Franklin Cty., Ohio,* 306 F.R.D. at 557; *see also In re Dry Max Pampers*, 724 F.3d 713, 721 (6th Cir. 2013) ("the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class") (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)). "The second criterion 'raises concerns about the competency of class counsel.'" *Franklin Cty., Ohio,* 306 F.R.D. at 557 (citing *Falcon*, 457 U.S. at 157 n. 13).

Plaintiffs respectfully suggests they have set forth both criteria for adequate representation. Plaintiff Smith-Journigan has come forward at some personal trepidation to represent misdemeanor detainees admitted to the custody of Franklin County. They have taken a principled stand for all detainees, and provided compelling deposition testimony about their experiences in Defendant's facilities.  Plaintiff Smith-Journigan is educated and were knowledgeable about the status of this litigation during their depositions. In pursuing justice in this way — in seeking to end the Defendant's unlawful practices, and in seeking to obtain compensation for their fellow class members, arguably at their own expense — Plaintiff Smith-Journigan has interests which are consistent, parallel, and indeed identical with that of the putative class members.  Accordingly, there is no antagonism or conflict presented in appointing Plaintiff Smith-Journigan as the class representative in this action.

The class in this action is also represented by competent and experienced class counsel who have invested considerable time and resources into the investigation and prosecution of this action. Copies of the resumes for the Plaintiff's proposed class counsel are attached to Attorney

Keach's affidavit as Exhibits 9, 10, 11 & 12.  Attorney Elmer Keach, the lead counsel in this action, has served as class counsel in over ten civil rights class actions addressing illegal strip searches that were successfully prosecuted against municipalities in four states.  *See, for instance, Marriott,* 227 F.R.D. at 172; *Wilson v. County of Gloucester,* 256 F.R.D. 479, 488 (D.N.J. 2009); *Boone v. City of Philadelphia,* 668 F. Supp.2d 693, 707 (E.D. Pa. 2009) ("Finally, class counsel in this case has substantial experience in litigating complex civil rights actions. They have served as class counsel in at least twenty strip-search class actions. Class counsel have also vigorously represented the class through four years of litigation, including discovery and motion practice). Further, Attorney Keach has extensive experience litigating complex federal civil rights actions, including previously before this Court.  *See, Doe v. Bone,* 2:11-CV-453 (MHW/MRA) (litigation involving the rape of a juvenile by a police chief, addressing complicated issues of *Monell* and supervisory liability; was settled pending consideration of motion for summary judgment). Attorneys Aaron Rihn and Nicholas Migliaccio served as co-counsel with Attorney Keach in several strip search class actions, and have extensive class action experience in product defect and consumer fraud cases. Importantly, class counsel in this action were found to be adequate in another related case presently pending before this Court, *McDonald v. Franklin County.*  Collectively, Class Counsel has the resources and ability to properly prosecute this class action, provide appropriate notice to the class, and take this matter to trial should that become necessary. For these reasons, the Plaintiff respectfully maintains that he is an adequate representative in this class action.

### D.  Ascertainability

Another important issue to be considered by the Court "that is implicit in a Rule 23 inquiry is that a court [must] conclude that the named plaintiffs seeking certification propose an identifiable, unambiguous class in which they are members." *Foundry Resins,* 242 F.R.D. at 402-

03. Plaintiffs have proposed a Class ("The Bail Class") and a Subclass ("The Fines Subclass") that are identifiable and unambiguous. The proposed class, all detainees charged with misdemeanors or other minor crimes who were admitted to the Franklin Correctional Centers before being arraigned, can easily be determined from Franklin County's computerized booking records, which were disclosed during discovery. These booking records reflect the names of all detainees, and their criminal charges, to allow for misdemeanants to be identified. To the extent additional information is needed, the detainee information sheets for each proposed class member will also assist in ascertaining class membership, with these records being electronic, and presumably being able to be electronically searched. (Detainee Information Sheet, p. 2) (Exhibit 4) ("Inmate had fanancial (sic) means to post own bond"). The bail sheets for each detainee are also maintained by Franklin County, and reflect which detainees stated they had the financial means to post bail. (Bail Sheet) (Exhibit 5). Additionally, there is no dispute that these detainees were strip searched when brought to the Franklin County Correctional Center or Franklin County Workhouse as new arrestees (versus being brought after arraignment) in the absence of any suspicion that they were carrying weapons or contraband. For these reasons, the Plaintiffs respectfully suggest they have proposed properly defined classes for the Court.[2]

*E. Money damages (Rule 23(b)(3))*

Rule 23(b)(3) permits certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating

---

[2] In the related case of *McDonald v. Franklin Cty., Ohio,* this Court found "the number of misdemeanant detainees admitted to [Franklin County's correctional facilities] who had photographs taken of their breasts, hypogastric region, genitals, and/or buttocks before being arraigned is ascertainable by reviewing records in the Identiview system." 306 F.R.D. 548, 556 (S.D. Ohio 2015).

17

the controversy." First, addressing predominance, this Court has previously indicated, "[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *Foundry Resins,* 242 F.R.D. at 408 (internal citations omitted). Thus, "[c]ommon questions need only predominate; they need not be dispositive of the litigation. The existence of individual issues, therefore, do not defeat class certification." *Id.*

Next, addressing superiority, "[this] requirement of Rule 23(b)(3) requires a court to balance the merits of a class action in terms of fairness and efficiency." *Kimber Baldwin Designs, LLC v. Silv Communs., Inc.*, No. 1:16-cv-448, 2016 U.S. Dist. LEXIS 173481, at *16-17 (S.D. Ohio Dec. 15, 2016). Class actions are favored where the aggregation of similar claims is likely to go un-redressed. *Id.* (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). This is especially true where there its "[improbable] that large numbers of class members would possess the initiative to litigate individually" because they are economically disenfranchised "or uninformed to enforce their rights." *McBean v. City of New York*, 228 F.R.D. 487, 503 (S.D.N.Y. 2005).

In the related case of *McDonald v. Franklin County*, this Court held Rule 23(b)(3) certification was proper, allowing the plaintiff to pursue individualized money damages on behalf of the class. There, the Court explained both predominance and superiority were met because:

> [The plaintiff] provided evidence of [Franklin] County's tattoo policy and photographs of class members' tattoos, both of which support her contention that common questions of law or fact predominate in this case. [The plaintiff] also note[d] that . . . [the] class members [were] not likely to file individual actions, thereby making a class action the superior method of adjudication. [Franklin] County [did] not provide any persuasive argument to the contrary.

306 F.R.D. 548, 560 (S.D. Ohio 2015). Similarly, here, Plaintiffs have proffered evidence of Franklin County's policy of denying misdemeanants the chance to post bail and subjecting them to gratuitous strip searches. Further, given the fact that many members of the proposed classes are low-income persons, may not speak English, and likely would have great difficulty pursuing their rights individually, a class action is the superior method of adjudication. Accordingly, Plaintiffs respectfully submit that this Court grant their request to pursue, on behalf of a class, individualized money damages under Rule 23(b)(3).

   F. *Injunctive Relief (Rule 23(b)(2))*

   Rule 23(b)(2) permits certification when, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Where parties have alleged the need to challenge a municipal policy where the relief requested "would obviously benefit the entire class," the certification of a 23(b)(2) class is warranted. *Seawell v. Universal Fid. Corp.*, 235 F.R.D. 64, 67 (E.D. Pa. 2006). Moreover, even the voluntary cessation of [a municipal defendant's] challenged practice 'does not deprive the federal court of its power to determine the legality of the practice.'" *Franklin Cty., Ohio*, 306 F.R.D. at 559 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Accordingly, if a municipal policy is found to be unconstitutional, "then an injunction is necessary to prevent the [c]ounty from 'return[ing] to [its] old ways.'" *Id.* (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). Here, as in the related case of *McDonald v. Franklin Cty., Ohio,* Plaintiffs and their counsel are determined to challenge, and end Franklin County's unlawful practices detailed herein. Therefore, Plaintiffs respectfully request injunctive relief pursuant to Rule 23(b)(2).

### G. *Partial Certification (Rule 23(c)(4)(A))*

Should the Court determine full certification under Rule 23(b)(3) is not appropriate, Plaintiffs submit, in the alternative, that partial certification per Rule 23(c)(4)(A) would still be proper. Federal courts have long accepted and endorsed the flexibility to certify a class as to certain unifying issues pursuant to Rule 23(c)(4)(A). *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985). Other courts considering unconstitutional municipal policies, often involving unconstitutional strip searches, have accepted the option of partial certification "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219 (2d Cir. 2006). *See also Sutton v. Hopkins Cnty., Ky*., 2007 U.S. Dist. LEXIS 3143, at *27 (W.D.Ky. Jan. 11, 2007) ("Any individual issues with respect to defenses and/or damages will be considered in the second phase of the litigation"). Specifically, Plaintiffs request that this Court certify this action to allow for a classwide determination of Franklin County's liability for maintaining a uniform policy of denying misdemeanant detainees the opportunity to post bail and subjecting them to unwarranted strip searches, in violation of their Due Process and Fourth Amendment rights.

## CONCLUSION

For these reasons, Plaintiff Trey Smith-Journigan respectfully requests that this Court certify this action as a class action.

Respectfully Submitted By:

/s Elmer Robert Keach, III

Dated:  September 6, 2019

_____

Elmer Robert Keach, III, Esquire
Admitted Pro Hac Vice
Law Offices of Elmer Robert Keach, III, PC
One Pine West Plaza, Suite 109
Albany, NY  12205
518.434.1718
bobkeach@keachlawfirm.com

Nicholas Migliaccio, Esquire
Migliaccio & Rathod, LLP
412 H Street, NE, Suite 302
Washington, DC  20002
202.470.3520
nmigliaccio@classlawdc.com

D. Aaron Rihn, Esquire
Robert Peirce & Associates, PC
707 Grant Street, Suite 2500
Pittsburgh, PA  15219
412.281.7229
arihn@peircelaw.com

Andrew Baker, Esquire
The Baker Law Group
107 South High Street, Suite 400
Columbus, OH  43215
614.228.1882
andrew.baker@bakerlawgroup.net

ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASS