UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Trey Smith-Journigan,
*individually and on
behalf of a class of
others similarly situated, et al.*,

    Plaintiffs,

v.

Franklin County, Ohio,

    Defendant.

Case No. 2:18-cv-328

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Trey Smith-Journigan[1] ("Plaintiff") renews his motion for class certification with respect to his 42 U.S.C. § 1983 claims against Franklin County, Ohio ("Defendant"). Mot. 2, ECF No. 99. For the following reasons, the motion is **DENIED WITH PREJUDICE**.

### I. BACKGROUND

The Court's August 29, 2022, Opinion and Order denying without prejudice Plaintiff's motion for class certification, ECF No. 63, set forth a complete background of the facts, the parties, and the claims in the Complaint, which the Court will not repeat here.

Relevant here, Plaintiff alleges that he and others similarly situated were

---

[1] Plaintiff Paul E. Williams, Jr. does not join the motion for class certification. Mot. 2, ECF No. 99.

placed in the Franklin County Sheriff's Department's custody and had their civil rights violated. Mot. 2, ECF No. 99-1 at PAGEID # 1620. Specifically, Plaintiff contends that he was "convicted of nothing, charged with minor crimes, denied the opportunity to immediately post bail when [he had] a right to do so, and [was] universally strip searched." *Id.*

According to Plaintiff, Defendant first requires misdemeanor detainees[2] to be "slated" (a process by which detainees provide their personal information, surrender property, and are strip searched while receiving a jail uniform) before giving them a chance to post bail. *Id.* Only upon completion of the slating process and after the misdemeanor detainees are assigned to a housing unit within the general population does Defendant communicate with Franklin County Municipal Court to set and accept the detainees' bail. *Id.* In other words, all bail-eligible misdemeanor detainees are <u>required</u> to be processed into general population (which process includes a strip search) before they are given an opportunity to post bail.

In fact, Plaintiff alleges that, upon his arrest, he possessed the financial means (through the credit cards carried on his person) to post bail immediately upon his entrance into the detention facility. Mot. 2, ECF No. 99-1 at PAGEID #

---

[2] The Court notes that Plaintiff's class definition and briefing identify putative class members as "detainees" or "misdemeanor detainees." *See generally* Mot. 2, ECF No. 99. Defendant refers to putative class members as "arrestees." *See* Resp. 2, ECF No. 113. Though Plaintiff seems to propose a class of individuals for whom pretrial detention has not been ordered by a court, the Court will adopt Plaintiff's verbiage and refer to putative class members as misdemeanor detainees.

1627. Yet, he contends, he was detained for several hours while the slating process was completed and he was placed into general population. *Id.* Only then did Defendant give him the opportunity to post bail which he did immediately by having his mother[3] make the payment. *Id.*

In April 2018, Plaintiff filed this action against Defendant, asserting claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment (unlawful search) and Fourteenth Amendment (deprivation of procedural due process). Compl., ECF No. 1. That is, Plaintiff contends primarily that the failure to provide him an opportunity to avoid a strip search by posting bail immediately upon his entrance to the detention facility violated his Fourth Amendment right against unreasonable searches and seizures. He also contends that the failure to provide such an opportunity violated his right to procedural due process.

Four years later, in August 2022, the Court denied Plaintiff's initial motion for class certification because Plaintiff had not established numerosity. Op. and Order, ECF No. 63 at PAGEID # 1215. To support numerosity, Plaintiff had used Defendant's annual report from 2012 (the "2012 Report"), which showed that

---

[3] Plaintiff notes that any misdemeanor detainee who enters a detention facility with the financial means to immediately post bail (for example, via the cash or credit cards on their body) loses that ability during the slating process, because Defendant removes the misdemeanor detainee's personal belongings during the slating process. Mot. 2 at PAGEID # 1620. Thus, by the time Defendant gives a misdemeanor detainee an opportunity to post bail—once in general population—they can no longer do so with the possessions with which they were arrested. *Id.*

Defendant processed upwards of 30,000 inmates each year at Franklin County Correctional Facilities ("FCCF") in 2010, 2011, and 2012. *Id.*

But the 2012 Report raised more questions than it answered. The 2012 Report did not cover the proposed class period (beginning April 11, 2016, until such time as the Court would enjoin Defendant), so it likewise did not provide the number of bail-eligible misdemeanor detainees during the relevant period. *Id.* at PAGEID # 1216. Nor did Plaintiff provide an estimate of how many of such bail-eligible misdemeanor detainees were, like Plaintiff, immediately able to post bail but denied an opportunity to do so. *Id.* At bottom, Plaintiff's evidence was overbroad and speculative. *Id.* Thus, the Court denied Plaintiff's motion without prejudice to renewal if identifying proper class members became administratively feasible. *Id.* at PAGEID # 1219.

Three years later, Plaintiff now brings this renewed motion for class certification. Mot. 2, ECF No. 99. Defendant opposes the motion, and Plaintiff filed a reply. Resp. 2, ECF No. 113; Reply 2, ECF No. 118.

## II.  STANDARD OF REVIEW

The "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citations omitted). To obtain class certification, a plaintiff must show that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *Wal-Mart*, 564 U.S. at 349).

In addition to fulfilling the prerequisites of Rule 23(a), "the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool*, 722 F.3d at 850. Here, Plaintiff moves for class certification pursuant to Rule 23(b)(3). This section allows for class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, when a party seeks class certification under Rule 23(b)(3), the class must be "ascertainable"—that is, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012).

"A district court has broad discretion to decide whether to certify a class," and "[c]lass certification is appropriate if the court finds, after conducting a rigorous analysis, that the requirements of Rule 23 have been met." *In re Whirlpool*, 722 F.3d at 850–51 (internal quotation marks and citations omitted).

> Ordinarily, this means that the class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action. On occasion it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question and rigorous analysis may involve some overlap between the proof necessary for class certification and the proof required to establish the merits of the plaintiffs' underlying claims.

*Id.* at 851 (cleaned up). Therefore, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "The party seeking the class certification bears the burden of proof" that the prerequisites to certification are met. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing cases).

### III.   ANALYSIS

**A.   Plaintiff's Claims and Proposed Class Definitions**

To recap, Plaintiff claims that misdemeanor detainees had the right, under Ohio law, to "immediately" post bail and that such right rendered strip searches unreasonable under the Fourth Amendment if the misdemeanor detainees had the financial means, and desire, to post bail "immediately" upon their entrance to the detention facility. Compl., ECF No. 1 at PAGEID # 2. Plaintiff argues that he

was denied the opportunity to immediately post bail even though he had the right and the means to do so and that, as a result, he was unconstitutionally subjected to a strip search as part of the slating process and admission to general population. *Id.* Importantly, Plaintiff does not challenge as illegal the placement into general population (and the concomitant strip search) of those misdemeanor detainees who were financially unable to "immediately" post bail (or, presumably, of any misdemeanor detainees who had the financial means to immediately post bail but would have chosen not to).

In his renewed motion to certify the class, Plaintiff seeks to certify one class:

> All detainees who, at the time of final judgment, have been placed into the custody of the Franklin County Correctional Center and/or Franklin County Workhouse, after being charged with misdemeanors, summary violations, traffic infractions, civil commitments or other minor crimes, including on arrest warrants, and who were immediately eligible for bail under Ohio law and the bail schedule and regulations mandated by the Franklin County Municipal Court that in fact posted bail within twenty-four hours of being taken into custody by Franklin County. The class period commences on April 11, 2016 and continues until November 18, 2025.[4] Specifically excluded from the Class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees, or assignees.

Mot. 2, ECF No. 99 at PAGEID ## 1613–14. Plaintiff also seeks certification of a sub-class:

---

[4] The Court assumes that Plaintiff intended the defined class period to be April 11, 2016, through November 18, 2024. *See* Mot. 2, ECF No. 99 at PAGEID # 1624 ("Plaintiff seeks the certification of a class period from April 11, 2016, until November 18, 2024.")

>All members of the foregoing class who, on Franklin County's "Miscellaneous Update Document," indicated that they had the financial means to post bond, or where information about the financial ability to post bond is absent from the form.

*Id.*

**B.    The Court cannot approve Plaintiff's proposed class definition.**

As an initial matter, Plaintiff and Defendant brief the issue as if the proposed class definition was intended to cover those bail-eligible misdemeanor detainees who were financially able to (and desired to) immediately post bail upon their entrance into an FCCF but were denied the opportunity to do so. They argue only whether the group of misdemeanor detainees who actually posted bail within 24 hours of their arrest is an adequate proxy for such a class.

But Plaintiff's proposed class definition plainly is *not* limited to those who had the financial means (and desire) to immediately post bail upon entrance to an FCCF facility. Instead, the proposed class definition explicitly encompasses any bail-eligible misdemeanor detainee who posted bail within 24 hours of their arrest. Mot. 2, ECF No. 99 at PAGEID ## 1613–14. That definition would encompass numerous misdemeanor detainees who obtained the financial means to post bail at some point within the 24-hour window after they entered an FCCF and is plainly not limited to the group of misdemeanor detainees that Plaintiff purports to seek to represent. Nor does it contain any language limiting putative class members to those who wished to avoid a strip search by posting bail, as opposed to those who may have had the financial means to post bail but

nonetheless desired to be placed in general population and await an initial appearance instead of posting bail.

Thus, either the class definition does not reflect Plaintiff's intent to limit the class to those who entered an FCCF with the means (and desire) to "immediately" post bail (presumably meaning with either cash or credit cards on their person sufficient to post bail) or the parties' briefing is not adequately directed at the proposed class definition. Each alternative is problematic.

**1. The proposed class definition is not ascertainable.**

Assuming Plaintiff's proposed definition was meant to limit the class to bail-eligible misdemeanor detainees who had the financial means and desire to "immediately" post bail, there are several problems.

One, as mentioned above, the definition explicitly is not limited to such a group and would, therefore, require revision.

Two, to the extent Plaintiff proposes the group of bail-eligible misdemeanor detainees who posted bail within 24 hours to serve as a manner of ascertaining who belongs in any such redefined class, the proposal is unworkable.

Plaintiff offers no manner of determining which misdemeanor detainees (who were otherwise eligible to post bail) came into the detention facilities with the financial means to post bail "immediately" (such as with cash or credit cards with a sufficient available limit). Surely, just because someone posted bail within

24 (or 12 or 8) hours does not inherently mean that they had the means to do so upon entrance.

Plaintiff tries to overcome this deficiency by relying on misdemeanor detainees' responses to the Miscellaneous Update Form—a form that inquired whether the misdemeanor detainee had the financial means to post bond. Mot. 2, ECF No. 99-1 at PAGEID # 1624. Plaintiff contends that he can ascertain which misdemeanor detainees who posted bail within 24 hours had the financial means to "immediately" post bail based on those booking records where the misdemeanor detainee (1) left the Miscellaneous Update Form blank on that question; or (2) checked "yes" to indicate that they had financial means to post bond. *Id.* at PAGEID # 1625.

But the Miscellaneous Update Form does not help Plaintiff because the form is not an indicator for those who actually had the means to immediately post bail. As for those who did not check "yes" or "no" on the Miscellaneous Update Form, Plaintiff assumes that they might have been able to post bond immediately. *Id.* But the Court cannot take this leap with Plaintiff. Because that portion of the Miscellaneous Update Form is blank, it is unclear how many misdemeanor detainees, like Plaintiff, had the ability to immediately post bond (thus avoiding the strip search and housing unit assignment) versus obtained the means sometime within 24 hours of entrance to an FCCF.

As to the misdemeanor detainees that checked "yes" on the Miscellaneous Update Form, the form is still unreliable. For example, Plaintiff submitted nine

individuals in his sample group from November 2019 who checked "yes" on the Miscellaneous Update Form. *Id.* Two of the nine individuals, K.K. and W.J., checked "yes" on the Financial Means Form, but the intake Officer noted on their booking entry forms that they did not, in fact, have the financial means to post bond. K.K. Booking Records, ECF No. 103-11 at PAGEID ## 2464, 2473; JW Booking Records, ECF No. 104-19 at PAGEID ## 2995, 3004. This undermines the reliability of even those who checked "yes" on the Miscellaneous Update Form because some may have checked "yes" only to later find out that they did not have the financial means to post bond immediately.

Thus, the Miscellaneous Update Form does not adequately capture misdemeanor detainees, like Plaintiff, who were denied the opportunity to "immediately" post bond though they had the financial means (and desire) to do so.

At bottom, a revised class definition is workable only if everyone in the class's claims rise or fall together. Neither the "24-hour" definition nor the "Miscellaneous Update Form" definition would support a class for Fourth Amendment purposes, for the reasons discussed above. Instead, any acceptable definition would need to encompass the legal theory behind Plaintiff's claim: that it was unreasonable to subject misdemeanor detainees to a strip search where they were eligible to (both because of the nature of their crime and because no extenuating circumstances required keeping the person detained), wanted to, and had the financial ability to post bail "immediately" upon entrance

to an FCCF *in lieu of* being processed into general population. But it has proven to be impossible to ascertain who would fall into such a class.

Moreover, because the Court cannot ascertain who would fit that definition, the Court likewise cannot ascertain whether numerosity would be met.

And even setting ascertainability and numerosity concerns aside, such a revised definition would not necessarily be adequate. For example, it may have been unreasonable to strip search someone who met the revised class definition on a day when there was enough space to hold that person apart from general population to grant them the "immediate" opportunity to post bail. But it might not have been unreasonable to require someone meeting the same definition to be strip searched and put in general population, despite their ability and desire to post bail, if there was nowhere safe to permit them to wait to do so. The point is that the potential factual variations for each misdemeanor detainee render it virtually impossible to define a class whose legal rights vis-à-vis the reasonableness of a strip search upon admission to the detention facilities can be resolved "in a single stroke." *McDonald v. Franklin County*, 306 F.R.D. 548, 562 (S.D. Ohio 2015) (denying in part the plaintiff's motion for class certification because "the proposed Strip Search Class encompasses members whose claims invoke different questions of law and fact, and different claims and defenses, from [the plaintiff's] claim").

In conclusion, the Court simply sees no administratively feasible method of defining an ascertainable class (let alone one of sufficient numerosity) that

Plaintiff could adequately represent and that would entail only a single, unified "reasonability" analysis for Fourth Amendment purposes. The fact that Plaintiff could ascertain, through booking records, a group of misdemeanor detainees who were similarly situated in that they were all denied the opportunity to immediately post bail does not mean that the group is similarly situated as to whether that denial actually resulted in an unreasonable strip search.

### 2. Plaintiff is not similarly situated to other members in the proposed class as defined.

To the extent that Plaintiff intended the class to match the explicit class definition—that is, to include not just those bail-eligible misdemeanor detainees who could (and wanted to) "immediately" post bail but rather all bail-eligible misdemeanor detainees who became eligible to post bail within 24 hours of their arrest, the proposed definition is still problematic.

Plaintiff's legal contention is that it was unlawful to strip search misdemeanor detainees who could have posted bail and been released *instead of* admitted to general population. He contends that Defendant should have held those misdemeanor detainees who were eligible for and able to post bail in a separate holding cell while giving them "the opportunity to post bail." *E.g.*, Mot. 16, ECF No. 99-1. But Plaintiff's legal position begs the question when it comes to class certification: how long of an "opportunity to post bail" did Defendant have

to grant before Defendant could "lawfully" begin the slating process (and concomitant strip search) of admitting them into general population?

With this proposed class definition, Plaintiff would apparently answer, "24 hours." Yet, Plaintiff provides no actual justification or support for why it would be legally unreasonable to strip search and place someone in general population at any point before 24 hours of admittance to the facility. In other words, Plaintiff fails to demonstrate that the 24-hour period is based on anything legally or factually relevant to the case—indeed, he alleges that he was released after eight hours. Mot. 2, ECF No. 99-1 at PAGEID # 1623. The lack of connection is all the more apparent given Plaintiff's readiness to arbitrarily shorten the 24-hour definition to 12 hours or 8 hours. See Reply 2–4, ECF No. 118.

The Court finds no such justification for defining the class as those bail-eligible misdemeanor detainees who paid bail within 24 hours of admittance to an FCCF. For example, it could very well be the case that it was unreasonable to slate, strip search, and house misdemeanor detainees who: (1) were immediately able to post bail with the possessions on their person at the time they entered the detention facility, (2) wanted to do so, and (3) would not otherwise have been subject to the slating process/admittance into general population were they given the chance to immediately bail out. Conversely, it is not necessarily *unreasonable* to slate, strip search, and house a bail-eligible misdemeanor detainee who did not have the means to post bail immediately upon entrance but obtained the means 23 hours after arrival to the detention facility. In other words,

"bail-eligible misdemeanor detainees who posted bail within 24 hours of arrest" is simply not necessarily a group of individuals who are similarly situated vis-à-vis the reasonableness of a strip search.

Moreover, the Court doubts that Plaintiff would be an adequate representative for such a class. Although the Court is encouraged by Plaintiff's knowledge of the litigation and "principled stand for all [misdemeanor detainees]," ECF No. 99-1 at PAGEID # 1637, Plaintiff's claims may not be typical of the proposed class because of the factual differences in his situation. For instance, Plaintiff could not recall the order in which he completed the intake process. See, e.g., Smith-Journigan Dep.13:16–14:22, ECF No. 31 (admitting that his memory regarding the intake process "might be off" and that he could not remember "the sequence"). Defendant also placed him in the "drunk tank" for a short time before he began the intake process. Id. To that end, Plaintiff's mother posted his bail eight hours after he entered an FCCF. Mot. 2, ECF No. 99-1 at PAGEID # 1623. These facts make Plaintiff dissimilarly situated to at least some of those whom Plaintiff's proposed class definition encompasses. See, e.g., Jenkins v. Macatawa Bank Corp., No. 1:03-CV-321, 2006 WL 3253305, at *7 (W.D. Mich. Nov. 9, 2006) ("In consideration of Priest's lack of recollection of the relevant events and inability to minimally describe his claim, the Court finds that he could not fairly and adequately represent the proposed class.").

In any event, the point is that the reasonableness of a search changes as the factual circumstances change, and Plaintiff has not shown that anyone who

posted bail within 24 hours of their arrest would be similarly situated vis-à-vis the lawfulness of their strip search and placement into general population. So, his proposed class definition does not warrant certification.[5]

Given the nearly eight years of litigation, extensive discovery done in this case, time and resources spent by both parties, and this being Plaintiff's second failed attempt to certify a class, the Court finds that the class claims against Defendant should be dismissed with prejudice.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion, ECF No. 99, is **DENIED**. Plaintiff's class claims are **DISMISSED WITH PREJUDICE**. This case will proceed with named Plaintiffs' individual claims only.

The Clerk shall terminate ECF No. 99.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5] Further, though the parties focus on the class definition for purposes of the Fourth Amendment claim, the Court is not convinced that classes for the Fourth and Fourteenth Amendment claims would necessarily share the same definition. No party has briefed on this issue, and the Court will not delay litigation further.